IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LANCE L. PARKER, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 22-1376-RGA |
| ROBERT MAY, et al. | : | |
| Defendants. | : | |

Lance L. Parker, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

**MEMORANDUM OPINION**

May 24, 2023
Wilmington, Delaware

**ANDREWS, U.S. District Judge:**

On October 20, 2022, Plaintiff Lance L. Parker, an inmate at James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983. (D.I. 3). He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 6). Plaintiff requests counsel. (D.I. 5). The Court proceeds to screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

## BACKGROUND

Plaintiff named as Defendants JTVCC Warden Robert May, the Delaware Department of Correction (the "DDOC"), JTVCC, Centurion, LLC, JTVCC staff, and Centurion, LLC staff. The following facts are taken from the Complaint and assumed to be true for purposes of screening the Complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021).

On September 27, 2022, Plaintiff, who was on crutches at the time, tripped over uneven pavement while walking in JTVCC. (D.I. 3 at 5). Plaintiff had been asking for a cane for months, but he did not receive one until after his fall. (*Id.* at 5-6). The fall was treated as a medical emergency because everything on his left side hurt and he could not get up on his own. (*Id.* at 5). Prison security staff members lifted him roughly without concern for his pain. (*Id.*). He was later told by medical staff that they, not security staff, should have lifted him. (*Id.*). Medical staff gave him three pills of generic pain medication, a sling for his arm, and ice. (*Id.*). After sitting for five and a half hours in a wheelchair, an x-ray technician arrived and determined that he was fine. (*Id.*). He was directed to return the sling because he did not have a "memo" for it. (*Id.*).

1

The following day, he put in a sick call about his pain from the fall. (*Id.* at 6). On September 29, 2022, he asked Sgt. Ebwelle if he could go to medical for his pain and his shortness of breath, and was told, "no," and to put in a sick call. (*Id.*). He was taken to the infirmary in a wheelchair 20 minutes later and then housed there in a cell for inmates on suicide watch. (*Id.*). It is unclear for how long Plaintiff was housed in this cell. There was no running water in the sink and he could not take a shower despite being "overly sweaty" as a result of panicking from his shortness of breath. (*Id.*). He could not use the phone or go to recreation. His only drinking water came from medication cups. (*Id.*). The lights were not turned on for the first 24 hours. (*Id.*). He told JTVCC officers that he had serious mental illness and that staying in the room was damaging his mental health, and they told him that it was the only room available, despite there being four open beds in regular rooms. (*Id.*).

On October 3, 2022, he went to work but had to leave early because of his pain. (*Id.*). As a result of his injuries from his fall and his "trip" to the observation room, his mental health deteriorated significantly and, on October 6, 2022, his mental health medication was increased. (*Id.* at 6-7). On the evenings of October 9 and 10, 2022, he did not receive his nerve medication and suffered in pain throughout the night as a result. (*Id.*). On October 10, 2022, he received the wrong dosage of medication, and the mistake was not documented in a report although the nurse acknowledged the mistake. (*Id.* at 7). Despite the mistake, the medication gave him "6-8 hours of relief from pain, spasms, and cramps." (*Id.*). He put in a sick call requisition to keep receiving whatever pill the nurse had accidentally given him. (*Id.*).

2

On October 12, 2022, he met with a physician named Tinasha. (*Id.*). He advised her that he was experiencing constant and growing pain and that he wanted to receive the medication the nurse accidentally gave him, or a higher dosage of the medication he was then receiving, but the physician would only give him Tylenol, which does nothing for him, because there was no report from the nurse. (*Id.*). Dr. Tinasha also advised him that he should have been receiving three doses of medication a day rather than the two he was receiving, but the nurse would not listen to him when he told her, thus leaving him in extended periods of pain, including for a third straight night. (*Id.* at 7-8). On October 4, 2022, he sent Warden May a certified letter informing him of the slip and fall, but the Warden did nothing to intercede. (*Id.* at 8).

Plaintiff asserts that the act of security staff lifting him up from his fall, rather than medical staff, constituted deliberate indifference; that Sgt. Ebwelle declining his request to go to medical and instead telling him to put in a sick call constituted deliberate indifference; that his stay in the observation cell constituted cruel and unusual punishment, deliberate indifference, and inadequate medical care; that the nurse giving him the wrong dosage of medication on October 10, 2022, constituted medical malpractice or negligence because the wrong dosage could have killed him if he was allergic; and that Dr. Tinasha's administration of Tylenol constituted medical neglect and delay of treatment.

For relief, Plaintiff seeks damages and injunctive relief ordering proper pain medications, rehabilitation, braces and other support devices, mental health assistance, and the repair of the uneven concrete. (*Id.* at 9).

## SCREENING OF COMPLAINT

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013) (quotation marks omitted); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (civil actions filed by prisoners seeking redress from governmental entities or government officers and employees). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020). Rather, a claim is deemed frivolous only where it relies on an "'indisputably meritless legal theory' or a 'clearly baseless' or 'fantastic or delusional' factual scenario.'" *Id.*

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant Plaintiff leave to amend her complaint unless

4

amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 11.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## DISCUSSION

**Improper Defendants.** Plaintiff has failed to name proper Defendants in this case, or state cognizable claims against the Defendants he did name. The DDOC is an agency of the State of Delaware and JTVCC falls under the umbrella of the DDOC. The Eleventh Amendment of the United States Constitution protects an unconsenting state

or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). Hence, as an agency of the State of Delaware, the DDOC, as well as JTVCC, are entitled to immunity under the Eleventh Amendment. *See, e.g., Evans v. Ford*, 2004 WL 2009362, *4 (D. Del. Aug. 25, 2004). The DDOC and JTVCC will be dismissed with prejudice.

When a plaintiff relies upon a theory of *respondeat superior* to hold a corporation such as Defendant Centurion liable, he must allege a policy or custom that demonstrates such deliberate indifference. *See Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003); *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Corr. Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). Plaintiff has not alleged there was a relevant Centurion policy or custom, and that the policy caused the constitutional violations underlying Plaintiff's claims. Therefore, the claims against Centurion fail and will be dismissed without prejudice.

Plaintiff alleges that he complained to Warden May about his care. Prison administrators, however, cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d at 69. "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical

6

prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.  Hence, the claims against Warden May fail and will be dismissed without prejudice.

Finally, it is insufficient to name JTVCC staff and Centurion staff as Defendants, without identifying the individual staff members Plaintiff wishes to name as Defendants. Even assuming there were properly named staff member Defendants, such as those identified by name in Plaintiff's allegations, the claims against them would be dismissed for failure to state a claim, as discussed below.

**Medical Claims.** The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976).  In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need.  *Id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prisoner has no right to choose a specific form of medical treatment.  *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. Apr. 10, 2010) (citing *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)).  "Mere disagreement as to the proper medical treatment is insufficient" to state a constitutional violation.  *Spruill*, 372 F.3d at 235 (citations omitted).  Treatment is presumed to be proper, absent evidence that there was a violation in the standard of care.  *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017).  In addition, allegations of medical malpractice are not sufficient to establish

7

a constitutional violation. *See White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (noting that negligence is not compensable as a constitutional deprivation).

Plaintiff's medical allegations fall short of stating a claim for deliberate indifference under the Eighth Amendment. His allegations amount to medical malpractice, negligence, and disagreement with his course of treatment. Accordingly, he has failed to state a deliberate indifference claim. He will be given leave to amend these claims.

**Eighth Amendment Claim.** Plaintiff claims that his confinement for an indeterminate period of time to the observation cell without running water or lights constituted cruel and unusual punishment in contravention of the Eighth Amendment.

"The Eighth Amendment prohibits deprivations suffered during incarceration that constitute an unnecessary and wanton infliction of pain, including those that are totally without penological justification." *McClure v. Haste*, 820 F. App'x 125, 128 (3d Cir. 2020) (per curiam) (quotations and citations omitted). The Third Circuit has explained that to violate the Eighth Amendment,

> [T]he deprivation alleged must be, objectively, sufficiently serious, resulting in the denial of 'the minimal civilized measure of life's necessities. Although the Eighth Amendment does not mandate comfortable prisons, prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care. In a challenge to those conditions, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. However, the proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of harm.

*Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372-73 (3d Cir. 2019) (quotations, citations, and footnotes omitted). Notably, "the length of the inmate's exposure to the

alleged unconstitutional conditions and the totality of the circumstances must be considered when making a determination as to whether a condition amounts to cruel and unusual punishment." *McClure*, 820 F. App'x at 129 (quotation and citation omitted). Here, Plaintiff has not alleged the length of time he was submitted to the conditions in the observation cell, but the allegations appear to indicate that it was too brief a period to constitute an Eighth Amendment violation. *See, e.g., Collier v. Adams*, 602 F. App'x 850, 853 (3d Cir. 2015) (per curiam) (holding that the deprivation of running water from an inmate's cell for 77 hours was not sufficiently serious to constitute an Eighth Amendment violation); *Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995) (holding no Eighth Amendment violation where prisoner spent four days in a "strip cell" without clothes, water in the cell was turned off and the mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld). This claim will be dismissed with leave to amend.

**Request for Counsel.** Plaintiff seeks counsel on the grounds that he suffers from mental illness and does not have the knowledge or resources to litigate his case or conduct discovery. (D.I. 5).

A *pro se* litigant proceeding in forma pauperis has no constitutional or statutory right to representation by counsel.[1] *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation

---

[1] *See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request.").

9

by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, courts consider a number of factors when assessing a request for counsel. Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *Tabron*, 6 F.3d at 157.

At this point there is not a viable complaint and no defendant has been served. Although Plaintiff will be given leave to file an amended complaint, whether appointment of counsel is merited is premature at this point. Accordingly, Plaintiff's request for counsel will be denied without prejudice to renew.

## CONCLUSION

For the above reasons, the Court will: (1) deny without prejudice to renew Plaintiff's request for counsel (D.I. 5); and (2) dismiss the Complaint as legally frivolous and for failure to state claims upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) & (ii) and 1915A(b)(1). Plaintiff will be given leave to file an amended complaint.

An appropriate Order will be entered.

11